The RUSSELL CHEMICAL COMPANY, Appellant,

v.

WYANDOTTE CHEMICALS CORPORATION, Appellee.

Patent Appeal No. 7229.

United States Court of Customs and Patent Appeals.

Nov. 5, 1964.

Bruce B. Krost, Woodling, Krost, Granger & Rust, Cleveland, Ohio, for appellant.

Robert E. Dunn, Wyandotte, Mich., for appellee.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

■ Appellant-petitioner is the owner of a registration on the mark "SENTROL" for "Dish Washing Solution," [1] and appeals the decision of the Trademark Trial and Appeal Board (see 137 USPQ 908) dismissing its petition to cancel two Principal Register registrations owned by appellee. Appellee's registrations both cover the mark "SENTOL," one for "Industrial-Type Detergent Powder For Cleaning Dairy Equipment,"[2] and the other for "Industrial-Type Liquid Detergent For Cleaning Dairy Equipment." [3] The stipulated facts establish that appellant's first use

in commerce antedated that of appellee by more than three years. The single issue for our consideration, therefore, is whether appellee's marks, when used on its goods, so resemble appellant's mark as to be likely to cause confusion, mistake or deception.

The record establishes that appellant's SEN-TROL product is a detergent solution intended primarily for use with power dishwashers, while appellee's SENTOL detergents are of the non-foaming, acid type which are said to be particularly useful for cleaning pasteurizers, pipelines and other dairy equipment.

On the basis of the differences between the respective products, the board concluded that confusion was not likely. We do not agree.

It is clear that there is no significant difference between the marks themselves. Deletion of the "r" from SEN-TROL has but little effect either upon the eyes of the viewer or the ears of the hearer. It seems to us that the similarity of the marks is such as to give rise to the likelihood of confusion. And if this likelihood is to be avoided, it must necessarily be because of some significant differences in the goods themselves. The position of the board was that:

> "While the products of both parties may be, as urged by petitioner, broadly related in that they are used for cleaning 'vessels', it is apparent that they are distinctly different products intended for quite dissimilar applications, and would ordinarily be promoted and sold to distinctly different classes of purchasers under different circumstances and conditions and move in entirely different trade channels. * * *"

The board concluded it would be doubtful that "the average purchaser of peti-

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge Worley, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. No. 615,464, registered November 1, 1955.

2. No. 683,776, registered August 18, 1959.

3. No. 714,491, registered April 25, 1961.

tioner's composition would under ordinary conditions be familiar with or be likely to encounter respondent's detergent composition." However, we do not agree that such specific differences in the goods and in the present channels of trade and classes of purchasers are sufficient to overcome the likelihood of confusion arising from the similarity of the marks themselves.

Unencumbered by obscuring legalisms, the question here is whether a purchaser would be likely to conclude that the same manufacturer was the source of both SENTOL and SEN-TROL products. We think such a conclusion would be highly likely. As appellant points out, the products are both intended for cleaning vessels utilized for food (e. g., pots, plates and cups on the one hand as against pasteurizers on the other). While selected persons might not be likely to purchase both products (for example, a restaurateur might buy SEN-TROL and a dairy farmer SENTOL), this fact is inconclusive, for we feel that purchasers may well be confused by the similarity of the names when confronted with the two related albeit specifically different products here in issue. As we said in Hollywood Water Heater Co. v. Hollymatic Corp., 274 F.2d 679, 47 CCPA 782, 784:

> " * * * Section 2(d) of the Trademark Act of 1946 and the unquestioned weight of modern authority in this field does not require a finding of confusing similarity of goods as the basis for sustaining a trademark opposition but instead requires us to determine whether it is 'likely' that the mark when applied to the goods of the applicant will cause confusion or mistake or deceive purchasers."

The board's position overlooks the fact that the products here are so related that, under the same or similar marks, they might normally be considered to be produced by a single entity.

■ Moreover, as we have often held, neither party is restricted by its registration to a particular channel of trade. E. g., Daggett & Ramsdell, Inc. v. I. Posner, Inc., 277 F.2d 952, 47 CCPA 952. Since the marketing environment is subject to change at any time it should not form the basis for any conclusive inference with respect to the issue of likelihood of confusion.

■ Here we have a set of marks so similar that any distinction is likely to be obscured in the pronunciation. In such a case, the respective goods must be widely dissimilar, and the purchasers extremely discriminating, before it can be said that confusion in trade is unlikely. These conditions are not met here. The decision of the board is accordingly reversed.

Reversed.