53 CCPA

**SCHENLEY INDUSTRIES, INC.,**
Appellant,

v.

**FOURNIER, INC., Appellee.**
Patent Appeal No. 7545.

United States Court of Customs and Patent Appeals.
March 24, 1966.

Milton B. Seasonwein, New York City, for appellant.

Submitted on record by appellee.

Before RICH, Acting Chief Judge, and MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

This appeal is from a decision of the Trademark Trial and Appeal Board, 142 USPQ 391, dismissing an opposition[1] brought by appellant, Schenley Industries,, Inc., (Schenley) to an application[2] filed by appellee, Fournier, Inc., (Fournier) to register a composite mark consisting of the words "TWO FEATHERS" in association with a design:

Registration is sought for use with pickled, brandied, spiced and preserved fruits, fruit preserves, fruit butter and toppings made of fruit, nuts and flavorings; first use as of August 31, 1960 is alleged.

Opposer Schenley is owner of registration No. 392,466[3] for the word mark:

The mark is applied to whiskey, first use as of 1919 being alleged.

1. Opposition No. 41,682.

2. Serial No. 104,446, filed Sept. 14, 1960.

3. Registered Dec. 30, 1941 to Oldetyme Distillers, Inc., and republished March 17,

The case was submitted on stipulation of facts by both parties, and was briefed and argued before us only by appellant Schenley, appellee Fournier submitting on the record.

The issue here is likelihood of confusion when the marks are used concurrently on their respective products. The significant facts as set forth in the stipulations appear as follows.

According to opposer Schenley's stipulation of facts, whiskey bearing the mark "THREE FEATHERS" has been sold through opposer's predecessors in title since about 1919, except for the period of national prohibition. Whiskey bearing that mark has been advertised in newspapers, magazines, trade papers and other publications, as well as through other media and at the point of sale. Approximately 20 million dollars has been spent on such advertising during the period between January 1, 1941 and April 30, 1962, and during this same period Schenley sold 22 million cases of whiskey under that mark in interstate commerce. Schenley further stipulates:

6. That whiskey is sold in hotels, restaurants and package stores and in some instances in establishments which also sell food products and other commodities. Establishments which sell whiskey and other commodities are permitted and licensed for example in the states of Missouri, Illinois and New Jersey, among others.

Accompanying the Schenley stipulation are two exhibits, the first showing labels "currently" used on whiskey bearing the "THREE FEATHERS" mark. The second exhibit consists of "photostatic copies of proofs of typical advertisements of whiskey bottled and sold under the trade mark 'Three Feathers' which appeared in newspaper and magazines between 1941 and 1962."

Appellee stipulates that the design features of its mark "TWO FEATHERS"

1953, by Melrose Distillers, Inc., predecessors in interest of appellant Schenley, all of whom are hereinafter designated as Schenley.

were developed from the family coat-of-arms of the president of Fournier, W. Bauer. The Bauer coat-of-arms may be described generally as comprising a shield with a key and arrow crossed thereon with a gold crown surmounted by two ostrich feathers and a mantle around the shield in the form of a cloak; the Bauer family name is visible below the shield. It is further stipulated that appellee's products bearing the composite mark "TWO FEATHERS" plus coat-of-arms design are sold in retail food stores, supermarkets and department stores, and that no "Internal Revenue Department" label approval is required. Appellee's stipulation further states that it does not manufacture or sell beverages of any description, and that "there has been no indication of confusion in trade or confusion as to origin by reason of the use of applicant's mark and the mark of the opposer."

We are of the view that on the above stipulated facts which appear supported by the record, there is a likelihood of confusion, mistake or deception resulting from the use of the marks on the respective goods. We are not led to that conclusion on the basis of the composite mark "TWO FEATHERS" as compared to the word mark "THREE FEATHERS" alone. Rather, it is in conjunction with the representation of feathers in the design aspects of appellee's mark as compared to appellant's advertisements of the whiskey depicting a cluster of three feathers in a relationship similar to that shown in appellee's mark, that we find a likelihood of confusion. Two of appellant's advertisements are reproduced here:

 

While there is no evidence that the labels made of record here were in fact used prior to appellee's use of its mark on its goods, there is evidence of prior use of such advertisements, some of which depict the above design involving three feathers in association with the word mark on labels on the whiskey bottles. Section 2(d) provides that such evidence be considered in determining likelihood of confusion:

Sec. 2 (15 U.S.C. § 1052). Trademarks registrable on the principal register

No trade-mark * * * shall be refused registration * * * unless it—

* * * * * *

(d) [c]onsists of or comprises a mark which so resembles a mark registered in the Patent Office *or a mark* or trade name *previously used*

*in the United States by another and not abandoned,* as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive * * * [Emphasis ours.]

 Whether spelled out or in the form of a design, it is clear that the dominant feature of both marks is feathers. While we do not overlook the fact that Schenley's broad stipulation #6, quoted above, states merely that whiskey, not whiskey bearing a composite mark "THREE FEATHERS" in association with a design representation of feathers, is sold in establishments selling food products, it is clear that the products of both parties could be sold in the same establishments in some instances. We think that the relationship between some of the products of the two parties [4] is such that the average purchaser would be justified in assuming and would be likely to assume that the goods are of common origin. Castle & Cooke, Inc. v. Joseph E. Seagram & Sons, Inc., 346 F.2d 621, 52 CCPA 1425.[5] Further, we must resolve any doubt in favor of the first user as against the newcomer.

For the above reasons we must reverse the board.

Reversed.

SMITH, Judge (concurring).

The similarity between "Two Feathers" and "Three Feathers" is so close that when they are spoken as trademarks they will sound alike and will be likely to create confusion, mistake and purchaser deception when used on related goods. This fact makes it unnecessary to here consider the futher visual embellishments shown in appellee's composit mark. The goods of both parties are such that spoken marks will be used to call for and designate the goods of the respective parties.

For the reasons more fully stated in Hollywood Water Heater Co. v. Hollymatic Corp., 274 F.2d 679, 47 CCPA 782. I do not consider the asserted differences in the goods to which the respective marks are applied to be determinative of the issue here. I agree with the majority that the goods of the parties are so related that "the average purchaser would be justified in assuming and would be likely to assume that the goods are of common origin."

While prior decisions are of dubious value in deciding the issue of likelihood of confusion in a case such as the present, the rationale of Castle & Cooke, Inc. v. Joseph E. Seagram & Sons, Inc., 346 F.2d 621, 52 CCPA 1425, seems to me to require a reversal of the decision of the Trademark Trial and Appeal Board.

---

4. Appellant's products on which the mark is sought to be registered include: Pears in Mint, Brandied Figs, Brandied Peaches, Brandied Fruits for Salad, Brandied Pineapple, Nesslerode Topping, Cocktail Mix, Brandied Apricots, Brandied Kumquats, Pickled Peaches, Preserved Watermelon, Peach Preserve, Peach Butter and Brandied Pears.

5. The board cited its decision in Castle & Cooke, Inc. v. Royal Hawaiian Liqueurs, Inc., 140 USPQ 40 (T.T. & A.B., 1963) in connection with its view on this point. Since that decision was reversed on appeal in Castle & Cooke, Inc. v. Joseph F. Seagram & Sons, Inc., supra, it cannot provide any support for the board's position.